UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CARL RICE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00050-JPH-MG |
| | ) | |
| FRANK VANIHEL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DIRECTING ENTRY OF FINAL JUDGMENT**

Petitioner Carl Rice, an Indiana prisoner, filed this civil action to challenge a prison disciplinary proceeding identified as Case No. WVE 21-10-0077. For the reasons explained in this Order, Mr. Rice's request for relief must be **denied.**

## I.  Filing of Amended Petition

After the Respondent filed his Return to Order to Show Cause addressing the claims raised in the Petition, Mr. Rice filed an Amended Petition indicating that he was transferred from the custody of Warden Frank Vanihel at Wabash Valley Correctional Facility to the custody of Warden Dushan Zatecky at Putnamville Correctional Facility. A federal habeas corpus action brought by a state prisoner must name as the respondent "the state officer who has custody" of the petitioner. Rule 2(a) of the Rules Governing Habeas Corpus Petitions; *Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005) (proper respondent is the prisoner's current custodian). Accordingly, the **clerk is directed** to update the docket to reflect that Warden Dushan Zatecky is now the Respondent in this action.

1

Other than the new custodial information, the Amended Petition and Memorandum in Support, dkts. [11] and [12], are the same as the original Petition and Brief in Support, dkts. [2] and [3]. Additional briefing is not necessary under these circumstances.

## II.  Legal Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974).

## III.  The Disciplinary Proceeding

On October 14, 2021, Lieutenant Petty wrote a Report of Conduct ("Conduct Report") charging Mr. Rice with violating B-231, Intoxicating Substance.  The Conduct Report states:

> On 10/14/21 at approx. 1350 hrs. I, Lt. Petty, was making rounds. I came thru the 2 100 rg O/S rec doors and saw in the bathroom Rice 951805 w/ something dark in his hand. He was slow to react. He stepped back and tossed the smoking brown item around the corner by the north (rt.) sink. I asked him what he was doing. His eyes were partially closed, reddish, and glassy looking. He looked

2

"stoned" (intoxicated). He kept stepping towards me as I would step back. He said it was tobacco. He left the bathroom then circled back around thru the other door as I was picking up 2 pieces of brown items. He again kept stepping towards me into my personal space as I would step back. In my 29 yrs. [of] experience, I believe he was intoxicated. His speech was also slow/slurry.

Dkt. 10-1.

The cited offense, B-231, prohibits the "[m]aking, receiving, giving, transferring, trading, or in any other manner moving from one person to another, or possessing an intoxicating substance, or being under the influence of any intoxicating substance (e.g., alcohol, inhalants, or chemical-soaked paper)." Dkt. 10-11 at 7–8. Mr. Rice was notified of the charge on October 28, 2021, when he received the Conduct Report and the Notice of Disciplinary Hearing ("Screening Report"). Dkt. 10-4. Mr. Rice requested the appointment of a lay advocate but declined to call witnesses. Dkt. 10-4. He further requested chemical testing, the urinalysis results ("drug test"), and the nurse's vitals report ("Nurse's Report") as his evidence. *Id.* His requests for a lay advocate, the drug test, and the Nurse's Report were granted. Dkts. 10-2, 10-3, 10-5 and 10-7.

A hearing was held on November 4, 2021. Mr. Rice pled not guilty. Dkt. 10-7. The hearing officer recorded Mr. Rice's statement from the hearing: "It was tobacco. I asked for it to be tested. She has the evidence. Where is the evidence she picked up [?] [S]he should have it." *Id.* During the hearing, the hearing officer considered the drug test's negative results for all tested substances. Dkt. 10-2. The hearing officer also considered the Nurse's Report which indicated that Mr. Rice visited a nurse for suspected intoxication at 3:47 p.m., about two hours after the time of the incident. Dkt. 10-3 at 1; dkt. 10-1 (Conduct Report reflecting

3

that the incident occurred at 1:50 p.m.). The Nurse's Report also stated that Mr. Rice "denies any illicit drug use. Speech clear. Does not appear to be acutely intoxicated." *Id.* at 3.

Based on Mr. Rice's statement, the Conduct Report, the Nurse's Report, and the drug test, dkts. 10-1, 10-2, 10-3, and 10-7, the hearing officer found Mr. Rice guilty. Dkt. 10-7. The sanctions imposed included the deprivation of forty-five days of credit time and a written reprimand. *Id.*

Mr. Rice appealed to the Facility Head. He raised three grounds for relief, which can be summarized as follows: 1) there was insufficient evidence to find him guilty; 2) he was denied evidence, specifically chemical testing of the confiscated material; and 3) the prison officials violated the prison's policies and procedures by failing to maintain a chain of custody for the confiscated material. Dkt. 10-8. The appeal was denied. *Id.* The Facility Head explained: "Your appeal has been received and reviewed. I find no procedural errors and the sanctions are well within the allowed guidelines. You weren't written up for a controlled substance, you were written up for an intoxicating substance." *Id.*

Mr. Rice then appealed to the Final Reviewing Authority arguing as grounds for relief: 1) the prison officials violated the Policy and Administrative Procedural Manual; 2) a prison official obstructed justice; 3) his due process rights were violated; and 4) he was denied an impartial decisionmaker. Dkt. 10-9.

In denying his final appeal, the Appeal Review Officer stated that "[t]he procedure and due process of this case appear to be true and accurate," and

explained: "The charge is clear; the evidence sufficient. The sanctions are within the guidelines of the Disciplinary Code for Adult Offenders. There is no present information indicating modification or dismissal is necessary." Dkt. 10-10. Mr. Rice then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## IV.  Analysis

In his petition and accompanying memorandum, Mr. Rice asserts four grounds for relief. First, prison officials violated his due process rights by denying him the opportunity to present exculpatory evidence and failing to provide chemical tests of the brown material that he was accused of smoking. Dkt. 2 at 3, dkt. 3 at 3–4. Second, prison officials failed to maintain a chain of custody for this confiscated evidence. Dkt. 2 at 3, dkt. 3 at 1–3. Third, the hearing officer violated his due process rights by finding him guilty without any evidence. Dkt. 2 at 4, dkt. 3 at 4–6. Fourth, prison officials violated his due process rights by failing to provide him with an impartial decisionmaker. Dkt. 2 at 3, dkt. 3 at 6–7.

### A. Denial of Evidence

Mr. Rice argues that he was denied the right to present exculpatory evidence. Dkt. 2 at 3; dkt. 3 at 3. Due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Documentary evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011), and it is material if disclosing it creates

a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). Mr. Rice claims that prison officials denied his requests to present the confiscated contraband; that is, the brown substance that Lieutenant Petty picked up. Dkt. 2 at 3.  He also allegedly sought and was denied chemical testing of this evidence. *Id.* Further, Mr. Rice asserts that the prison officials did not establish a chain of custody for this evidence. *Id.*; dkt. 3 at 3.

### 1. Tobacco

The Conduct Report states that Lieutenant Petty saw Mr. Rice with something dark in his hand and that he "tossed the smoking brown item" around the corner. Dkt. 10-1. Lieutenant Petty later retrieved two pieces of the brown substance. *Id.* Mr. Rice told Lieutenant Petty at the time of the incident, and the hearing officer during the disciplinary hearing, that the smoking brown item was tobacco. *Id.*; dkt. 10-7. For the purposes of the present Petition, the Court accepts Mr. Rice's assertion that the smoking brown item was tobacco as true.

Mr. Rice argues that the hearing officer violated his due process rights by denying him the opportunity to present the tobacco at his hearing and his requests for lab testing on this evidence. Dkt. 3 at 2–3; dkt. 10-7 (stating "it was tobacco."). Respondent contends that the tobacco was irrelevant because to commit the relevant charge, B-231, Mr. Rice need not have been found smoking or possessing intoxicants; instead, B-231 additionally bars "being under the influence of any intoxicating substance." Dkt. 10 at 7; dkt. 10-11 at 7–8. Indeed,

6

Lieutenant Petty charged Mr. Rice with being intoxicated based on Mr. Rice's appearance and behavior. Dkt. 10 at 6.

Accordingly, Mr. Rice cannot establish that presenting the tobacco would have created a reasonable probability of a different outcome because it was not exculpatory. As Respondent properly argues, the tobacco would not exculpate Mr. Rice because B-231 prohibits intoxication in addition to possession of an intoxicant. Dkt. 10 at 6, 9; *see also* Dkt. 10-11 at 7–8 (Offense B-231 definition includes "being under the influence of any intoxicating substance"). Even if Mr. Rice's tobacco was presented at the hearing, it would not negate Lieutenant Petty's testimony that Mr. Rice appeared "stoned" because the hearing officer could conclude that the source of Mr. Rice's intoxication may not be connected to the tobacco. Dkt. 10-1. Thus, any error in denying Mr. Rice's request for this evidence is harmless. *See Piggie*, 344 F.3d at 678 (harmless error analysis applies to prison disciplinary proceedings). Accordingly, Mr. Rice's argument fails.

Additionally, Mr. Rice claims that prison officials' denial of his requests for chemical testing of this evidence prevented him from presenting evidence that would have proven his innocence. Dkt. 2 at 3; dkt. 13 at 6. Respondent argues that Mr. Rice is not entitled to lab testing. *Id.* at 6, 9. Prison officials are not required to provide evidence that they do not have. *See Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017) ("Prison administrators are not obligated to create favorable evidence or produce evidence they do not have."). Additionally, although the evidence must otherwise still be sufficient, Petitioners have no right

to laboratory testing. *Id.* ("Manley was not entitled to demand laboratory testing and publications about the reliability of the particular field test, just as the hearing officer implied by calling those demands unreasonable.").

Here, Mr. Rice was not entitled to have the tobacco tested or to require the prison officials to present evidence that they did not confiscate the tobacco as evidence of his charge. Dkt. 10 at 6 (indicating that Lieutenant Petty did not confiscate the items for evidence by noting that there is no confiscation slip or any other record of this evidence). While Mr. Rice argues that the Conduct Report states that Lieutenant Petty picked up two pieces of tobacco and that this supports his contention that she confiscated it as evidence, the fact that she retrieved these items does not mean that she confiscated them as evidence of his guilt. Dkt. 3 at 2 (citing Dkt. 10-1). Rather, Lieutenant Petty may have retrieved the tobacco for security and safety concerns.

## 2. Chain of Custody

Mr. Rice also argues that the prison officials failed to establish a proper chain of custody for the tobacco. Dkt. 3 at 1–3. Respondent counters that there was no physical evidence that required a chain of custody. Dkt. 10 at 5–6. The Seventh Circuit holds that "[a]dministrative decisions resting on chemical analysis typically require both the test results and a chain of custody linking those results to the particular prisoner." *Ellison v. Zatecky*, 820 F.3d 271, 275 (7th Cir. 2016) (citing *Webb v. Anderson*, 224 F.3d 649, 652–53 (7th Cir. 2000)). However, the chain of custody need not be perfect. *Id.*

Here, both parties agree that the prison officials did not conduct a chemical test. Dkt. 3 at 2; dkt. 10 at 5–6. Moreover, Respondent properly contends that Lieutenant Petty did not base the intoxication charge on the fact that she saw Mr. Rice smoking something. Dkt. 10 at 6 (citing Dkt. 11-1). Rather, she charged Mr. Rice with intoxication based on his appearance and her experience. Dkt. 10-1 (Lieutenant Petty stating that Mr. Rice appear "stoned," that his eyes were "partially closed, reddish, and glassy looking," and that his speech was "slow and slurry").

The chain of custody rule applies when the evidence in question, usually a chemical test, is used to convict a prisoner and a record is required to tie the evidence to the prisoner's charge. *Ellison*, 820 F.3d at 275 (holding that a mere email stating that a positive test occurred is insufficient without additional information about who performed the test or an officer's opinion based on his training and experience that the substance was an intoxicant). Because Mr. Rice's conviction was not dependent on this evidence, the prison officials were not required to establish a chain of custody.

Accordingly, Mr. Rice was not denied exculpatory or material evidence, and thus he is not entitled to relief on this claim.

### 3. Prison Policies and Procedures

Mr. Rice also claims that the prison officials violated their chain of custody policies and procedures. Dkt. 2 at 3. Respondent asserts that habeas review does not extend to state policies. Dkt. 10 at 9–10. In his Reply, Mr. Rice claims that if

Lieutenant Petty believed he was intoxicated, then he was required to follow the prison's protocols for preserving evidence and chemical testing. Dkt. 13 at 4–5.

Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief."). Accordingly, to the extent that Mr. Rice's claims the prison officials violated state policies, his claim fails.

### B. Sufficiency of Evidence

Mr. Rice further argues that the hearing officer did not have sufficient evidence to find him guilty. Dkt. 3 at 6. Specifically, he argues that there was no physical evidence presented at the hearing and that the hearing officer did not consider the confiscated evidence and the lab test results that Mr. Rice requested. *Id.* Respondent counters that Lieutenant Petty's statements in the

Conduct Report provide sufficient evidence that Mr. Rice was intoxicated. Dkt. 10 at 6, 8.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison,* 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles,* 288 F.3d 978, 981 (7th Cir. 2002). Further, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455-56; *see also Eichwedel v. Chandler,* 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones,* 637 F.3d at 849 (quoting *Scruggs,* 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney,* 723 F. App'x at 348 (citing *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000)). A conduct report "alone" may establish the "some evidence" requirement. *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999).

A hearing officer is not required to view physical evidence or to conduct tests when the Conduct Report provides sufficient evidence. *Id.* Lieutenant

11

Petty's statements about Mr. Rice's intoxicated appearance in the Conduct Report satisfies the "some evidence" standard. *Hunt v. Benefiel*, No. 2:21-cv-00404-JPH-DLP, 2022 U.S. Dist. LEXIS 181392, at *9 (S.D. Ind. Oct. 4, 2022) ("IDOC correctional officers may offer testimony based on their experience in that role, which requires them to recognize characteristics of intoxication, and to even further, identify illegal substances and contraband. The officers' professional experience is, at a minimum, 'some evidence' that the DHO could consider.").

Here, the Conduct Report indicates that Lieutenant Petty stated that Mr. Rice appeared "stoned (intoxicated)," that his eyes "were partially closed" and appeared "reddish and glassy," that his speech was "slow and slurry," that he was "slow to react," and that he kept moving towards Lieutenant Petty even when she backed away. Dkt. 10-1. Finally, Lieutenant Petty indicated that she based her conclusion that Mr. Rice was intoxicated on her twenty-nine years of experience as a correctional officer. Dkt. 10-1. This is sufficient evidence that Mr. Rice was intoxicated. *See Gutierrez v. Kermon*, 722 F.3d 1003, 1012 (7th Cir. 2013) (While there is no "litmus test," common indicia of intoxication include "watery or bloodshot eyes," "impaired attention and reflexes," "unsteady balance," and "slurred speech.").

Mr. Rice also argues that the hearing officer erred in finding him guilty because the negative drug test and the statement that he did not appear "acutely intoxicated" in the Nurse's Report contradicted the Conduct Report. Dkt. 3 at 6 (citing dkts. 10-2 and 10-3). Respondent counters that this evidence does not undermine the hearing officer's guilty finding because there was a time delay

between Lieutenant Petty's encounter with Mr. Rice and the nurse's evaluation of Mr. Rice and the administration of the drug test. Dkt. 10 at 8. Respondent further states that the negative drug test does not undermine the conviction because Mr. Rice's conviction dealt with mere intoxication, not a specific substance. *Id.* In his Reply, Mr. Rice restates the same arguments previously stated in his petition. Dkt. 13 at 8–9.

In this case, the Hearing Report indicates that the hearing officer considered all the evidence, including the drug test and nurse's report. Dkt. 10-7. From that evidence, the hearing officer could have reached a different conclusion. But the hearing officer found the Conduct Report more persuasive than the other evidence. *See id.* To find in Mr. Rice's favor, the Court would have to do exactly what it is prohibited from doing, that is, "reweigh the evidence underlying the hearing officer's decision" and base its decision on "other record evidence [that] supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb*, 224 F.3d at 652). Accordingly, Mr. Rice's argument fails.

For the reasons listed above, the Court finds that there is sufficient evidence to support Mr. Rice's conviction.[1]

### C. Impartial Decisionmaker

Finally, Mr. Rice claims that he was denied an impartial decisionmaker because the hearing officer found him guilty without any evidence. Dkt. 3 at 5.

---

[1] Because the Court denies Mr. Rice's claim on the merits, it need not consider Respondent's exhaustion argument. Dkt. 10 at 2, 15–18. *Cf. Brown v. Watters*, 599 F.3d 602, 609-10 (7th Cir. 2010) (courts may bypass issue of exhaustion and deny petitioner's habeas claim on the merits) (citing *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997)).

13

Mr. Rice further states that the hearing officer should have viewed the tobacco, ordered a chemical test on this evidence, and relied on the Nurse's Report and the drug test to find him not guilty. *Id.* at 4–5. Respondent counters that a guilty finding is insufficient to establish bias and that Mr. Rice does not dispute that the hearing officer was involved in the underlying incident or the investigation leading to the charges. Dkt. 10 at 13–15 (citing *Liteky v. U.S.*, 510 U.S. 540, 556 (1994)).

A prisoner in a disciplinary action possesses the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson,* 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie,* 342 F.3d at 666; *see Perotti v. Marberry,* 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin,* 421 U.S. 35, 47 (1975)). Indeed, the constitutional standard for impermissible bias is high. *Piggie,* 342 F.3d at 666. Hearing officers are impermissibly biased when they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Here, Mr. Rice's claims of bias are based on having been denied evidence and insufficient evidence presented at the hearing; he does not assert that the hearing officer was involved in the events underlying the charge or the investigation. As this Court stated above, Mr. Rice was not denied exculpatory or material evidence and the hearing officer had sufficient evidence to find Mr.

14

Rice guilty. The fact that the hearing officer gave more weight to the Conduct Report than other evidence and ultimately found Mr. Rice guilty does not imply bias. *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir. 2000) (evidence of judicial rulings rarely if ever constitutes a valid basis for a claim of partiality); *In re Golant*, 239 F.3d 931, 938 (7th Cir. 2001) (absent other evidence, a decision maker's bias is not present "merely because a party loses on the merits").

In reply, Mr. Rice claims that the hearing officer had a disqualifying relationship with Lieutenant Petty because he was a subordinate of Lieutenant Petty and that their "titles" support this contention. Dkt. 13 at 7. However, even if a hearing officer may have some general loyalty to the officer who writes the Conduct Report, this is insufficient to establish to bias. *Higgason v. Hanks*, Nos. 97-1687 & 97-1688, 1998 U.S. App. LEXIS 279, at *8–9 (7th Cir. 1998) ("Any adjudicator who is a prison insider is likely to have working relationships with other prison insiders, but *Wolff* does not disapprove of using prison insiders as adjudicators.") (citing *Wolff*, 418 U.S. at 592 (Marshall, J., concurring in part) (noting that the Constitution does not prevent "responsible prison officials" from sitting on prison disciplinary committee)). Moreover, a disqualifying relationship between a hearing officer and witness or participant generally refers to a spousal or significant other relationship. *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002) (noting that a hearing officer's "intimate" relationship such as a spouse or significant other with a witness or participant would violate the right to an impartial decisionmaker).

Here, there is no evidence that the hearing officer and Lieutenant Petty had any type of relationship other than a working relationship. Additionally, the record is unclear whether the hearing officer was Lieutenant Petty's subordinate. Mr. Rice cites to the Conduct Report and the Hearing Report as evidence that Lieutenant Petty outranked the hearing officer. Dkt. 13 at 7 (citing dkts. 13-1 and 13-3). The Court reviewed both documents and finds that neither of these documents identify the hearing officer's rank.

Finally, there is no indication that the hearing officer was instructed to convict Mr. Rice or was pressured to find Mr. Rice guilty. Further, Mr. Rice does not dispute that the hearing officer was not involved in the investigation or the facts leading up to the charge. Dkt. 13 at 7–8. Therefore, there is no evidence of bias. Accordingly, Mr. Rice is not entitled to relief on this claim.

## V.  Conclusion

For the reasons stated above, Mr. Rice is not entitled to habeas corpus relief under 28 U.S.C. § 2254. Accordingly, Mr. Rice's petition for a writ of habeas corpus is **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 2/2/2023

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

16

Distribution:

CARL RICE
951805
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Greencastle, IN 46135
Electronic Service Participant – Court Only

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov